UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────

DARLA W.,

                              Plaintiff,

v.                                                    5:20-cv-1085 (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

───────────────────────────────────────

APPEARANCES:                          OF COUNSEL:

CONBOY, MCKAY LAW FIRM                PETER L. WALTON, ESQ.
  *Counsel for Plaintiff*
407 Sherman Street
Watertown, NY 13601

SOCIAL SECURITY ADMINISTRATION        NATASHA OELTJEN, ESQ.
OFFICE OF THE GENERAL COUNSEL
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## DECISION AND ORDER

Darla W. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying her request for disability insurance benefits.  (Dkt. No. 1.)  This case

has proceeded in accordance with General Order 18 of this Court.  Pursuant to 28 U.S.C. §

636(c), the parties consented to the disposition of this case by a Magistrate Judge.  (Dkt. No. 4.)

Both parties filed briefs.  (Dkt. Nos. 12, 16.)  Oral argument was not heard.  For the reasons set

forth below, the matter is reversed and remanded for further administrative proceedings.

## I.     BACKGROUND

Plaintiff was born in 1972, has a high school education, and worked as a medical support assistant until a motor vehicle accident in May of 2017.  (T. at 37, 61, 162.[1])  Following the accident, Plaintiff obtained medical treatment for neck pain, back pain, and numbness in her hands and feet.  *Id.* at 164, 166, 283, 393.  Plaintiff filed for disability insurance benefits on February 28, 2018, alleging disability beginning May 23, 2017.  *Id.* at 61-62, 149.  Plaintiff claimed the following disabilities: spondylosis of the cervical region, intervertebral disc degeneration of the lumbar region, chronic nerve damage in her neck, and neural foraminal stenosis.  *Id.* at 161.

The Commissioner denied Plaintiff's initial application, and she requested a hearing before an Administrative Law Judge ("ALJ").  *Id.* at 67, 74, 80.  ALJ David Romeo held a hearing on May 3, 2019, and Plaintiff testified along with vocational expert John F. Bopp.  *Id.* at 31-60.  The ALJ denied Plaintiff's claim for benefits on June 14, 2019, and the Appeals Council denied Plaintiff's request for review on July 14, 2020.  *Id.* at 1, 10-20.  Plaintiff now seeks this Court's review.  (Dkt. No. 1.)

## II.     STANDARD OF REVIEW

In reviewing a final decision of the Commissioner, courts must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision.  *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)); *see also Brennan v. Colvin*, No. 13-CV-6338 AJN RLE, 2015 WL

---

[1] The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns. Page references to other documents identified by docket number are to the page numbers assigned by the Court's CM/ECF electronic filing system.

1402204, at *10 (S.D.N.Y. Mar. 25, 2015).[2]  "Failure to apply the correct legal standards is grounds for reversal."  *Pollard v. Halter*, 377 F.3d 183, 188-189 (2d Cir. 2004).  Accordingly, the reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied.  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

If the ALJ applied the correct legal standards, the reviewing court must determine whether the ALJ's decision is supported by substantial evidence.  *Tejada*, 167 F.3d at 773; *Bowen*, 817 F.2d at 985.  "Substantial evidence means more than a mere scintilla."  *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*; *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the ALJ's finding as to any fact is supported by substantial evidence, it is conclusive.  *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995).

When inadequacies in the ALJ's decision frustrate meaningful review of the substantial evidence inquiry, remand may be appropriate.  *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).  Remand may accordingly be appropriate where ALJ has failed to develop the record, *Klemens v. Berryhill*, 703 F. App'x 35, 38 (2d Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999), adequately appraise the weight or persuasive value of witness testimony, *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019); *Burgess v. Astrue*, 537 F.3d 117, 130 (2d Cir. 2008), or explain its reasoning, *Klemens*, 703 F. App'x at 36-38; *Pratts*, 94 F.3d at 39.

---

[2] Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted.  *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

## III.   DISCUSSION

The ALJ denied Plaintiff's request for disability benefits because he determined Plaintiff could perform her prior job as a medical support assistant.  (T. at 19.)  In reaching this decision, the ALJ made several conclusions, three of which Plaintiff now challenges.  *Id.* at 17-19.  First, the ALJ concluded the medical opinions of Plaintiff's examining physician, Dr. Kevin Scott, an orthopedic surgeon, were "neither inherently valuable nor persuasive."  *Id.* at 19.  Second, the ALJ concluded Plaintiff's symptoms were inconsistent with the medical evidence and her daily activities.  *Id.* at 17-18.  Third, the ALJ concluded Plaintiff had sufficient residual functional capacity to perform her job as a medical support assistant.  *Id.* at 19.

For the reasons set forth below, the case is remanded.

### A.   Medical Opinions

#### 1.   Four Medical Opinions

Four doctors offered medical opinions concerning Plaintiff's disability related limitations: Dr. Elke Lorensen, Dr. James Lawrence, Dr. Kevin Scott, and Dr. Jacqueline McMorris.  (T. at 61, 336, 346, 450, 455, 459, 464.)   On May 2, 2018, consultative examiner Dr. Elke Lorensen examined Plaintiff and issued a medical opinion.  (T. at 336-339.)  Dr. Lorensen noted that Plaintiff complained of neck and back pain due to the motor vehicle accident in May of 2017.  *Id.* at 336.  Plaintiff complained that the neck and back pain radiated into her shoulder and was accompanied by weakness and numbness in her right arm.  *Id.*  Plaintiff further complained that the back pain across her lower lumbar spine radiated into her left hip and was aggravated by bending and prolonged periods of sitting—which caused tingling sensations in her feet.  *Id.*  Plaintiff's pain medications included Tylenol with codeine "for extreme pain."  *Id.*  Dr. Lorensen noted that Plaintiff had lumbar spine surgery in 2005 for pain.  *Id.*  After noting

4

Plaintiff's daily activities and conducting a physical examination, Dr. Lorensen concluded

Plaintiff had "no gross limitations sitting, standing, walking, and handling small objects with

hands." *Id.* at 337-339.  Dr. Lorensen further concluded Plaintiff had "[m]oderate limitations for

bending, lifting, reaching, and turning the head." *Id.* at 339.

On May 17, 2018, state agency physician Dr. Lawrence completed a Disability

Determination Explanation.  (T. at 61-68.)  Before issuing his opinion, Dr. Lawrence reviewed

Dr. Lorensen's opinion along with some of Plaintiff's medical records.[3]  *Id.* at 62-63.  Dr.

Lawrence concluded Plaintiff had two severe medically determinable impairments: "Disorders of

Back-Discogenic and Degenerative" and "Osteoarthrosis and Allied Disorders."  *Id.* at 64.  Dr.

Lawrence concluded those impairments could not reasonably be expected to produce Plaintiff's

pain because her "noted functional limitations [we]re not consistent with [the] objective evidence

in file."  *Id.* at 64-65.  According to Dr. Lawrence's residual functional capacity assessment,

Plaintiff could occasionally lift, push, or pull 20 pounds; frequently lift, push, or pull 10 pounds;

and stand, walk, or sit for about 6 hours in an 8-hour workday.  *Id.* at 65.  Dr. Lawrence therefore

opined that Plaintiff was not disabled because she could perform her past relevant work as a

medical support assistant.  *Id.* at 67.

Independent medical examiner Dr. Kevin Scott, an orthopedic surgeon, issued four

separate medical opinions after examining Plaintiff and reviewing relevant medical records on

November 15, 2017, March 7, 2018, May 9, 2018, and August 8, 2018.  (T. at 450-466.)  Dr.

Scott's first opinion, from November 15, 2017, indicates that he conducted a physical

---

[3] It appears Dr. Lawrence reviewed medical records from the Samaritan Medical Center.  (T. at 63.)  It is unclear when those records are from, which doctors they involve, and how many office visits those records encompass.  *See id.*

examination of Plaintiff, reviewed relevant medical records,[4] and reviewed two MRIs from June

2, 2017.  *Id.* at 451-452.  Dr. Scott noted that Plaintiff was "on Tylenol with Codeine for pain."

*Id.* at 451.  Dr. Scott observed that Plaintiff's range of motion was below normal for her cervical

spine and lumbar spine, she had lumbar spine pain, and she had "palpable spasms" along her

cervical spine and lumbar spine.  *Id.* at 451-452.  Dr. Scott concluded Plaintiff had "[c]ervical

and lumbar strain with compression of the L5 nerve root in the lumbar spine with right upper

extremity and right lower extremity radiculopathy."  *Id.* at 452.  He further concluded there was

a causal relationship between Plaintiff's motor vehicle accident in May of 2017, and her

diagnosis.  *Id.*  Based upon his review of the medical evidence and his physical examination, Dr.

Scott opined Plaintiff could "only do a sedentary job with no bending, twisting and no prolonged

standing" nor any "lifting over 10 pounds."  *Id.* at 453.

　　　　Dr. Scott's second opinion, from March 7, 2018, indicates that he conducted another

physical examination of Plaintiff, reviewed additional medical records,[5] and reviewed an EMG

from October 25, 2017.  *Id.* at 455-456.  The physical examination revealed that Plaintiff's range

of motion was still reduced in her cervical spine and lumbar spine, where she experienced

spasms.  *Id.* at 456.  Plaintiff had a "Spurling maneuver to the right side [of her cervical spine]

that goes down her right arm," and her right triceps muscle was weaker than her left.  *Id.* at 456.

Plaintiff experienced pain "with extension of her lumbar spine."  *Id.*  Dr. Scott concluded

---

[4] Before issuing his November 15, 2017 medical opinion, Dr. Scott reviewed the following
medical records: EMR patient summary report from May 21, 2017; Samaritan Medical Center
office note from May 24, 2017; Dr. Steven Fish office note from July 24, 2017; Physical therapy
visits (6) from June 22, 2017, through July 13, 2017; Dr. Howard Huang office note from
September 7, 2017.  (T. at 451.)

[5] Before issuing his March 7, 2018 medical opinion, Dr. Scott reviewed the following medical
records: Kinney Drugs from September 14, 2017; Dr. Howard Huang office notes from October
25, 2017, December 8, 2017, and January 19, 2018; physical therapy visits (7) from November 2,
2017, through January 29, 2018.

Plaintiff had "[c]ervical and lumbar strain with L5 and C7 nerve root compression." *Id.* Based

on his review of the medical evidence and his physical examination, Dr. Scott opined that

Plaintiff could "only do a sedentary job with no bending, twisting and no prolonged standing"

nor any "lifting over 10 pounds." *Id.*

Dr. Scott's third opinion, from May 9, 2018, indicates that he conducted another physical

examination of Plaintiff, reviewed additional medical records,[6] and reviewed two MRIs from

March 12, 2018. *Id.* at 459-460. Dr. Scott noted that Plaintiff was "complaining of more right

arm pain," and her back "still bothers her but it is the neck and arm that bother her more." *Id.* at

459. The physical examination revealed that Plaintiff's reflexes improved since her last exam,

her range of motion in her cervical spine and lumbar spine was still low, "she still ha[d] positive

Spurling maneuver down in that right arm and into the C-7 nerve root distribution," and her right

triceps muscle was still weak. *Id.* at 460. Based upon what he saw, Dr. Scott's diagnosis and

work restrictions remained the same. *Id.* at 461.

Dr. Scott's fourth opinion, from August 8, 2018, indicates that he conducted another

physical examination of Plaintiff, reviewed additional medical records,[7] and took a second look

at the MRIs from March 12, 2018. *Id.* at 465. Dr. Scott noted Plaintiff's medications still

included Tylenol with codeine. *Id.* His physical examination of Plaintiff revealed that Plaintiff's

cervical spine and lumbar spine range of motion was still below normal, and she still had a

"positive Spurling maneuver to that right side." *Id.* Dr. Scott's diagnosis remained the same,

---

[6] Before issuing his May 9, 2018 medical opinion, Dr. Scott reviewed the following medical records: Dr. Huang office notes from February 21, 2018, April 3, 2018; Kinney Drugs from March 7, 2018.

[7] Before issuing his August 8, 2018 medical opinion, Dr. Scott reviewed the following medical records: Dr. Bruce Baird office note from May 10, 2018; physical therapy visits (4) from March 30, 2018, through May 11, 2018.

and he opined that Plaintiff's "[w]ork restrictions would be a sedentary position with no pushing, pulling or lifting over 10 pounds," and she should "avoid excessive walking or standing." *Id.* at 466.

On August 31, 2018, state agency physician Dr. McMorris completed a Physical Residual Functional Capacity Assessment. *Id.* at 346-353. According to Dr. McMorris, Plaintiff's primary diagnosis was "Cervical Spondylosis; Lumbar DJD," and her secondary diagnosis was "Hypothyroidism; S/P Lumbar Laminectomy." *Id.* at 346. Dr. McMorris concluded Plaintiff's symptoms were attributable to a medically determinable impairment, and the severity of those symptoms and their alleged "effect on function [wa]s consistent with the total medical and nonmedical evidence." *Id.* at 351.[8] Dr. McMorris concluded Plaintiff's exertional limitations included: occasionally lifting, carrying, pushing, or pulling 20 pounds; frequently lifting, carrying, pushing, or pulling 10 pounds; and standing, walking, or sitting about 6 hours in an 8-hour workday. *Id.* at 347. Dr. McMorris concluded Plaintiff was limited to occasionally climbing ramps or stairs, balancing, kneeling, crouching, and crawling because she "shows moderate limitations in bending." *Id.* at 348. Dr. McMorris further concluded Plaintiff was limited in "[r]eaching in all directions (including overhead)" because she "shows limitations in lifting and reaching, and turning head due to cervical disc disease." *Id.* at 349.

## 2.    The ALJ's Decision

The ALJ concluded Dr. McMorris' opinion had "the most persuasive value." *Id.* at 18. According to the ALJ, Dr. McMorris' opinion was persuasive because (i) it "provide[d] support

---

[8] Dr. McMorris indicated this by writing "A, C" on the sixth page of her report, which corresponds with the conclusions that "A.  The symptoms is attributable, in your judgment, to a medically determinable impairment," and "C.  The severity of the symptom(s) and its alleged effect on function is consistent in your judgment, with the total medical and nonmedical evidence."  (T. at 351.)

for a determination that the claimant retains the ability to perform light exertional work," (ii) Dr. McMorris reviewed the evidence and provided a "detailed explanation . . . for her opinion," and (iii) her opinion was "consistent with the evidence of record." *Id.* The ALJ assigned "some persuasive value" to Dr. Lawrence's opinion because it "[wa]s essentially consistent with the opinion of Dr. McMorris, and also supports an ability on the part of the claimant to do work at the light level of exertion." *Id.*

The ALJ also assigned "some persuasive value" to Dr. Lorensen's opinion because (i) it "[wa]s consistent with an ability on the part of the claimant to perform light exertional work," (ii) it "[wa]s based upon a direct examination of the claimant," (iii) it was "supported by the findings that Dr. Lorensen made and included in her report," (iv) Dr. Lorensen had a "familiarity with the policies and evidentiary requirements of the SSA's disability program," and (v) "the purpose of her examination of the claimant was to render a medical opinion on disability." *Id.* The ALJ did not find Dr. Lorensen's opinion concerning Plaintiff's bending limitation persuasive because it was "inconsistent with the opinions of Dr. McMorris and Dr. Lawrence." *Id.* at 19. The ALJ assigned more persuasive value to the opinions of Drs. McMorris and Lawrence on this point because they "had the opportunity to review the available evidence of record . . . before rendering their own opinions." *Id.*

The ALJ concluded Dr. Scott's medical opinions were "neither inherently valuable nor persuasive under the Regulations for numerous reasons (20 CFR 404.1504; 20 CFR 404.1520b(c))." *Id.* The ALJ reasoned Dr. Scott's medical opinion had no persuasive value because his "assessments of the claimant [we]re based solely upon No-Fault insurance rules and methodology and, consequently, are not binding in this forum (20 CFR 404.1504)." *Id.* The ALJ further reasoned, "the determination of whether a claimant is unable to work and, therefore,

disabled under the Social Security Act has been reserved to the Commissioner, and thus the Administrative Law Judge." *Id.*

### 3.     Legal Standard

For disability claims filed on or after March 27, 2017, an ALJ's review of medical opinion evidence and prior administrative medical findings is governed by 20 C.F.R. § 404.1520c.  Under this regulation, applicable here,[9] the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. § 404.1520c(a); *see also Howard D. v. Saul*, No. 5:19-CV-01615 (BKS), 2021 WL 1152834, at *11 (N.D.N.Y. Mar. 26, 2021).  Rather, the ALJ must use five factors to determine the persuasiveness of the medical opinion evidence and prior administrative medical findings: supportability; consistency; relationship with the claimant; specialization; and other factors, such as "a medical source's familiarity with the other evidence in a claim."  20 C.F.R. §§ 404.1520c(a)-(c); *see also Howard*, 2021 WL 1152834, at *11.

The two most important factors in this analysis are supportability and consistency.  20 C.F.R. § 404.1520c(b)(2); *see also Howard*, 2021 WL 1152834, at *11. The ALJ is specifically required to "explain how she considered the supportability and consistency factors" when determining the persuasiveness of "a medical source's medical opinions or prior administrative medical findings."  20 C.F.R. § 404.1520c(b)(2); *see also Howard*, 2021 WL 1152834, at *11. "If the ALJ fails adequately to explain the supportability or consistency factors, or bases her explanation upon a misreading of the record, remand is required."  *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-4630 (LJL) (BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30,

---

[9]  Plaintiff filed her claim on February 28, 2018.  (T. at 149.)

2020), *report and recommendation adopted*, No. 19-CV-4630 (LJL), 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021); *see also Howard*, 2021 WL 1152834, at *12 (observing "courts have remanded where an ALJ did not adhere to the regulations") (collecting cases).

Under the supportability factor, the more a medical opinion or prior administrative medical finding is reinforced by "relevant . . . objective medical evidence and supporting explanations," the "more persuasive" it will be.  20 C.F.R. § 404.1520c(c)(1); *Carmen M. v. Comm'r of the Soc. Sec. Admin*, No. 20-CV-06532-MJR, 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021) ("The supportability factor asks how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations.").  Under the consistency factor, a medical opinion or prior administrative medical finding is "more persuasive" if it is consistent "with the evidence from other medical sources and nonmedical sources in the claim."  20 C.F.R. § 404.1520c(c)(2); *Galo G. v Comm'r of the Soc. Sec. Admin*, No. 3:20-CV-1011 (FJS), 2021 WL 5232722, at *4 (N.D.N.Y. Nov. 9, 2021) ("The regulations provide that with respect to consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be.").

"An ALJ must consider, but is not required to discuss, the three remaining factors when determining the persuasiveness of a medical source's opinion."  *Howard D.*, No. 2021 WL 1152834, at *11; *see also* 20 C.F.R. §§ 1520c(a), (b)(2).  However, where the ALJ has found two or more divergent medical opinions to be equally well supported and consistent with the record, the ALJ must articulate how he or she evaluated the three remaining factors.  20 C.F.R. §§ 404.1520c(b)(3).

### 4.      The ALJ Erred in Evaluating Medical Opinions

At the outset, the Court disagrees with Plaintiff's assertion that it was error for the ALJ to

evaluate Dr. Lawrence's opinion as a medical opinion.  (Dkt. No. 12 at 13.)  The Disability

Determination and Transmittal form includes the specialty code 34 for Dr. Lawrence.  (T. at 69.)

This indicates that his medical specialty is "Physical Medicine."  *See* POMS DI 24501.004(B),

available at https://secure.ssa.gov/poms.nSf/lnx/0424501004 (last accessed Dec. 6, 2021).  This

is strong evidence that Dr. Lawrence is a medical doctor.  *See, e.g.*, *Madera v. Comm'r of Soc.*

*Sec.*, No. 20-CV-1459 (PKC), 2021 WL 4480656, at *3 n.5 (E.D.N.Y. Sept. 30, 2021);

*Besseghini v. Colvin*, No. 1:15-CV-00508(MAT), 2017 WL 6616380, at *1 n.3 (W.D.N.Y. Dec.

27, 2017); *Eddie Alberto Lugo Cortes v. Comm'r of Soc. Sec.*, No. 7:16-CV-1012 (CFH), 2017

WL 3524674, at *5 (N.D.N.Y. Aug. 15, 2017).  Consequently, there is substantial evidence to

conclude Dr. Lawrence is, in fact, a medical doctor.  *Accord Madera*, 2021 WL 4480656, at *3

n.5.  The ALJ did not err in reaching this conclusion.

### i.      Dr. Scott

However, the Court agrees with Plaintiff that the ALJ erred in failing to analyze Dr.

Scott's opinions under 20. C.F.R. § 404.1520c.  Dr. Scott is a medical source who issued four

medical opinions.  *See* 20 C.F.R. §§ 404.1502(a)(1), (d) (defining "medical source" and

"acceptable medical source"); 20 C.F.R. § 404.1513(a)(2) (defining "medical opinion").  "When

a *medical source* provides one or more *medical opinions*," the ALJ is required to "consider those

medical opinions . . . using the factors listed in paragraphs (c)(1) through (c)(5) of [20. C.F.R. §

404.1520c]."  20 C.F.R. § 404.1520c(a) (emphasis added); *see also* 20 C.F.R. § 404.1513(a);

*Howard*, 2021 WL 1152834, at *11; *Rivera*, 2020 WL 8167136, at *13.  A "medical source" is

"an individual who is licensed as a healthcare worker by a State and working within the scope of

practice permitted under State or Federal law."  20 C.F.R. § 404.1502(d); *see also id.* at

§ 404.1502(a)(1) (defining acceptable medical source as "a medical source who is a . . . Licensed

physician").  It is undisputed that Dr. Scott is a licensed physician who practices medicine in

New York.  (T. at 450-466.)  He is therefore a *medical source*.  20 C.F.R. §§ 404.1502(a)(1), (d).

The record also demonstrates that Dr. Scott issued four medical opinions.  (T. at 450-

466.)  A *medical opinion* is a statement from a *medical source* about what Plaintiff can still do

despite her impairments and whether she has one or more impairment-related limitations or

restrictions in her ability to perform the physical demands of work.  20 C.F.R. §

404.1513(a)(2)(i).  Dr. Scott's opinions fit this definition—he identified Plaintiff's impairments

and opined on how those impairments limited Plaintiff's ability to perform the physical demands

of work.  (T. at 450-466.)  Dr. Scott is therefore a medical source who issued medical opinions.

20 C.F.R. §§ 404.1502(a)(1), (d); 20 C.F.R. § 404.1513(a)(2).  It was error for the ALJ to

conclude otherwise.  (T. at 19.)  It was also error for the ALJ to fail to analyze the persuasive

value of Dr. Scott's medical opinions under 20. C.F.R. § 404.1520c.  *See id.*

Instead of treating Dr. Scott as a medical source and evaluating the persuasive value of

his medical opinions under 20. C.F.R. § 404.1520c, the ALJ concluded Dr. Scott's opinions were

"neither inherently valuable nor persuasive under the Regulations."  (T. at 19.)  In support of this

conclusion, the ALJ cited 20 C.F.R. § 404.1504 and 20 C.F.R. § 404.1520b(c).  *Id.*  Neither

regulation supports the ALJ's conclusion.

The first, 20 C.F.R. § 404.1504, stands for the proposition that "a decision by any other

governmental agency or nongovernmental entity about whether [claimant is] disabled, blind,

employable, or entitled to any benefits . . . based on its rules . . . is not binding on [the

Commission]."  20 C.F.R. § 404.1504.  No record evidence supports the conclusion that Dr.

Scott is a "governmental agency or nongovernmental entity"[10] who determined whether Plaintiff was disabled, employable, or entitled to any benefits under a separate set of rules.  *See* 20 C.F.R. § 404.1504; *see also* T. at 450-466.  Instead, as explained herein, the evidence demonstrates that Dr. Scott is a medical source who issued a medical opinion about Plaintiff's medically determinable impairments and accompanying physical limitations.  *See* 20 C.F.R. §§ 404.1502(a)(1), (d); 20 C.F.R. § 404.1513(a)(2).

Under 20 C.F.R. § 404.1504, the ALJ is required to "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision . . . in accordance with § 404.1513(a)(1) through (4)."  20 C.F.R. § 404.1504; *see also Sadusky v. Saul*, No. 3:19 CV 736 (RMS), 2020 WL 2730834, at *9 (D. Conn. May 26, 2020); *Paul G. v. Saul*, No. 5:18-CV-1054, 2020 WL 9848451, at *6 (N.D.N.Y. Mar. 17, 2020) (collecting cases). Those provisions define four categories of evidence: (1) objective medical evidence, (2) *medical opinion evidence*, (3) other medical evidence, and (4) evidence from nonmedical sources.  *See* 20 C.F.R. §§ 404.1513(a)(1)-(4).  The ALJ is required to consider those categories of evidence "under §§ 404.1520b, 404.1520c."  20 C.F.R. §§ 404.1513(a).  Because the ALJ treated Dr. Scott's medical opinions as supporting evidence underlying Plaintiff's No-Fault insurance claims, *see* T. at 19, he was required to consider Dr. Scott's medical opinion evidence under 20 C.F.R. § 404.1520c.  *See* 20 C.F.R. § 404.1504 ("we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision . . . as evidence

---

[10] "A decision by another governmental agency or nongovernmental entity is any disability, blindness, employability, Medicaid, workers' compensation, or other benefits decisions made by another governmental agency or nongovernmental entity for its program(s) using its own rules. This includes, but is not limited to, the Department of Veterans Affairs, the Department of Defense, the Department of Labor, the Office of Personnel Management, State agencies, and private insurers." POMS DI 24503.045(A), available at https://secure.ssa.gov/poms.nsf/lnx/0424503045 (last accessed Dec. 7, 2021).

in your claim in accordance with § 404.1513(a)(1) through (4).”); 20 C.F.R. § 404.1513(a)(2) (providing that medical opinion evidence will be considered under § 404.1520c); *see, e.g.*, *Charles F. v. Comm'r of Soc. Sec.*, No. 19-CV-1664-LJV, 2021 WL 963585, at *2 (W.D.N.Y. Mar. 15, 2021) (concluding “PA Barber's opinions . . . were medical opinions” and the ALJ was required to evaluate them under § 404.1520c).  The ALJ's failure to do so here constitutes legal error.  *Charles F.*, 2021 WL 963585, at *2.

The second provision cited by the ALJ in his decision, 20 C.F.R. § 404.1520b(c), defines three categories of evidence that “is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled.”  *See* 20 C.F.R. §§ 404.1520b(c)(1)-(3).  If evidence fits into one of these categories, the ALJ need not “provide any analysis about how [h]e considered such evidence.”  20 C.F.R. § 1520b(c).  The categories of unvaluable and unpersuasive evidence are (1) decisions by other governmental agencies and nongovernmental entities, (2) disability examiner findings, and (3) statements on issues reserved for the Commissioner.  20 C.F.R. §§ 404.1520b(c)(1)-(3).  The ALJ concluded Dr. Scott's medical opinion evidence was “neither inherently valuable nor persuasive,” but did not identify which of the three categories defined in subsections 404.1520b(c)(1) through (c)(3) applied to Dr. Scott's medical opinion evidence.  (T. at 19.)  As explained above, the evidence from Dr. Scott is “medical opinion” evidence under 20 C.F.R. § 404.1513(a)(2).  It does not fit any of the definitions of unvaluable and unpersuasive evidence under 20 C.F.R. §§ 1520b(c)(1) through (c)(3).  *See, e.g.*, *Charles F.*, 2021 WL 963585, at *2.[11]  The ALJ erred in concluding otherwise.

---

[11] To the extent the specific language defining “medical opinion” in 20 C.F.R. § 404.1513(a)(2) conflicts with the general language in 20 C.F.R. §§ 404.1520b(c)(1) through (c)(3) defining unvaluable and unpersuasive evidence, the specific language controls. *See, e.g.*, *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 170 (2007) (applying to conflicting regulations the rule of statutory interpretation that “the specific governs the general”).

Moreover, substantial evidence does not support the conclusion that Dr. Scott's medical opinions constitute disability decisions by a governmental agency or findings by a State agency disability examiner. *See* 20 C.F.R. §§ 404.1520b(c)(1)-(2). Although Dr. Scott's medical opinions include statements about the severity of Plaintiff's impairments and her ability to work, *see* 20. C.F.R. §§ 404.1520b(c)(3)(i)-(ii), the ALJ was not free to disregard Dr. Scott's medical opinions in their entirety. *See Johnathan W. v. Saul*, No. 6:19-CV-1242 (CFH), 2021 WL 1163632, at *7 (N.D.N.Y. Mar. 26, 2021); *Charles F.*, 2021 WL 963585, at *2; *Christopher M. V. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01500 (JJM), 2021 WL 804258, at *4 (W.D.N.Y. Mar. 3, 2021). Instead, the ALJ was required to analyze Dr. Scott's medical opinions under 20. C.F.R. § 404.1520c, specifically setting forth how he considered the supportability and consistency factors. *Johnathan W.*, 2021 WL 1163632, at *7; *Charles F.*, 2021 WL 963585, at *2. The ALJ's failure to do so was legal error. *Johnathan W.*, 2021 WL 1163632, at *7; *Charles F.*, 2021 WL 963585, at *2.

### ii. The ALJ Erred in Evaluating Additional Medical Opinion Evidence

The ALJ further erred when evaluating the medical opinion evidence of Drs. Lorensen, Lawrence, and McMorris. (*See* T. at 18-19.) First, the ALJ failed to explain how he considered the supportability factor when considering the persuasive value of their opinions. *See* 20 C.F.R. § 404.1520c(b)(2); *see also Howard*, 2021 WL 1152834, at *11. In particular, the ALJ failed to explain how the medical opinions of Drs. Lorensen, Lawrence, and McMorris were or were not supported by objective medical evidence and supporting explanations. *See* 20 C.F.R. § 404.1520c(c)(1); *see also Carmen M.*, 2021 WL 5410550, at *4. Instead, the ALJ concluded the medical opinions of Drs. McMorris and Lawrence provided "support for a determination that the claimant retains the ability to perform light exertional work." (T. at 18.) The ALJ further

16

concluded Dr. Lorensen's medical opinion was "supported by the findings that [she] made and included in her report." *Id.* The supportability factor measures whether the medical opinion is supported by objective medical evidence and accompanying explanations. 20 C.F.R. § 404.1520c(c)(1). It does not measure whether the medical opinion is supported by a single doctor's findings, nor whether the medical opinion supports a determination that the individual can still work. *Id.*; *see also Carmen M.*, 2021 WL 5410550, at *4.

Second, the ALJ's evaluation of the consistency factor failed to explain how the medical opinions of Drs. Lorensen, Lawrence, and McMorris were or were not consistent "with the evidence from other medical sources and nonmedical[12] sources in the claim." 20 C.F.R. § 404.1520c(c)(2); *Galo G.*, 2021 WL 5232722, at *4. Instead, the ALJ concluded Dr. Lorensen's medical opinion had "some persuasive value" because, among other things, it was "consistent with an ability on the part of the claimant to perform light exertional work." (T. at 18.) This application of the consistency factor is flawed. The consistency factor measures whether a medical opinion is consistent with medical and nonmedical evidence in a claim, not whether a medical opinion is consistent with a conclusion that a claimant can still work. *See* 20 C.F.R. § 404.1520c(c)(2).

The ALJ's application of the consistency factor to Dr. Lawrence's medical opinion is also flawed. The ALJ assigned "some persuasive value" to Dr. Lawrence's medical opinion because it was "essentially consistent with the opinion of Dr. McMorris." (T. at 18.) The consistency factor does not measure whether a medical opinion is consistent with a single other medical opinion—it measures whether the medical opinion is consistent with *all* medical and nonmedical

---

[12] "Nonmedical source means a source of evidence who is not a medical source," including the claimant. 20 C.F.R. § 404.1502(e).

evidence in a claim. *See* 20 C.F.R. § 404.1520c(c)(2). The ALJ's application of the consistency factor to Dr. Lawrence's medical opinion was accordingly flawed.

So too was the ALJ's application of the consistency factor to Dr. McMorris' medical opinion. The ALJ concluded her opinion had the "most persuasive value" because, among other things, it was "consistent with the evidence of record." (T. at 18.) This terse and conclusory analysis is inadequate because it frustrates this Court's meaningful review. *See Rivera*, 2020 WL 8167136, at *14; *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *9 (N.D.N.Y. Oct. 1, 2020). Moreover, substantial evidence does not support the ALJ's conclusion that Dr. McMorris' opinion was "consistent with the evidence of record." *See Andrew G.*, 2020 WL 5848776, at *9. For example, Dr. McMorris concluded Plaintiff could occasionally lift, carry, push, or pull 20 pounds, but Dr. Scott concluded Plaintiff could not push, pull, or lift anything over 10 pounds. (T. at 347, 466.) Plaintiff's reported weakness in her right hand and arm—which both Dr. Scott and Dr. Bruce Baird observed—is inconsistent with a conclusion that she could lift, carry, push, or pull 20 pounds. *See id.* at 39, 180, 184, 336, 410, 435, 456, 460. Dr. McMorris further concluded Plaintiff could stand or walk with normal breaks for six hours a day, but Dr. Scott concluded Plaintiff should "avoid excessive walking or standing." *Id.* at 347, 466. In light of these inconsistencies, the ALJ's conclusion that Dr. McMorris' medical opinion was "consistent with the evidence of the record" cannot be based on substantial evidence. *See Sadusky*, 2020 WL 2730834, at *10.

### B.    Plaintiff's Symptoms

To determine a claimant's residual functional capacity, the ALJ must consider all medical and nonmedical evidence, including the claimant's symptoms. 20 C.F.R. §§ 404.1545(a)(3), (e); *see also* 20 C.F.R. § 404.1529(c); SSR 16-3P, 2017 WL 5180304, at *12. The ALJ's evaluation

of a claimant's symptoms in turn requires the ALJ to consider medical opinion evidence.  *See* 20

C.F.R. §§ 404.1529(3)-(4); SSR 16-3P, 2017 WL 5180304, at *6-7.  When the ALJ conducts a

flawed evaluation of medical opinion evidence, it necessarily impacts the ALJ's evaluation of

symptoms.  *See* 20 C.F.R. §§ 404.1529(3)-(4) (requiring the ALJ to consider evidence from

medical sources when evaluating the intensity, persistence, and limiting effects of symptoms);

*see also Anne F. v. Saul*, No. 8:19-CV-774, 2020 WL 6882777, at *13 (N.D.N.Y. Nov. 24,

2020); *Christopher B. v. Saul*, No. 8:19-CV-00905 (BKS), 2020 WL 5587266, at *19 (N.D.N.Y.

Sept. 18, 2020).  A flawed evaluation of medical opinion evidence also impacts the ALJ's

assessment of a claimant's residual functional capacity.  *See* 20 C.F.R. § 404.1545(a)(3) ("We

will assess your residual functional capacity based on all of the relevant medical and other

evidence"); *see also Rodriguez v. Colvin*, No. 3:14-CV-1552, 2016 WL 1275647, at *7

(N.D.N.Y. Mar. 31, 2016); *Mortise v. Astrue*, 713 F. Supp. 2d 111, 127 (N.D.N.Y. 2010).

Here, the ALJ denied Plaintiff's claim at step four, concluding she was not disabled

because she had the residual functional capacity to work as a medical support assistant.  (T. at

13-19.)  This conclusion is flawed because the ALJ failed to consider medical opinion evidence

when evaluating the intensity, persistence, and limiting effects of Plaintiff's symptoms.  (T. at

17-18.)  It is also flawed because the ALJ failed to consider several enumerated factors that are

central to the evaluation of Plaintiff's symptoms.  *See id.; see generally* SSR 16-3P, 2017 WL

5180304, at *4-12 (explaining the factors and their application).  For example, the ALJ did not

consider: (1) the location, duration, frequency, and intensity of Plaintiff's pain or other

symptoms; (2) any precipitating and aggravating factors; (3) the type, dosage, effectiveness, and

side effects of any medication Plaintiff takes or has taken to alleviate her pain or other

symptoms; (4) the treatment Plaintiff received to relieve her pain or symptoms; or (5) measures

Plaintiff uses or has used[13] to relieve her pains or symptoms.  *See* 20 C.F.R. §§ 404.1529(3)(ii)-(vi); *see also* SSR 16-3P, 2017 WL 5180304, at *6-8.  These failures warrant remand. *Christopher B.*, 2020 WL 5587266, at *19-20; *Ingrassia v. Colvin*, 239 F. Supp. 3d 605, 627-628 (E.D.N.Y. 2017).

## IV.    REMAND

On remand, the ALJ should begin by re-evaluating the persuasive value of the medical opinions pursuant to 20 C.F.R. § 404.1520c.  The ALJ should articulate how persuasive he finds each medical opinion under the supportability and consistency factors.  *Id.* at § 404.1520c(b)(2).  If the ALJ finds equally persuasive two or more medical opinions that diverge on a specific issue, he should articulate how persuasive he found those opinions under the remaining factors. *Id.* at § 404.1520c(b)(3).

The ALJ should then assess the intensity, persistence, and limiting effects of Plaintiff's symptoms, considering "all of the medical and nonmedical evidence, including the information described in § 404.1529(c)."  20 C.F.R. § 404.1545(e); *see also id.* § 404.1545(a)(3); SSR 16-3P, 2017 WL 5180304, at *4-8.  The ALJ should consider Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms, and evaluate those statements in relation to the objective medical evidence and other evidence.  20 C.F.R. § 404.1529(c)(4); *see generally* SSR 16-3P, 2017 WL 5180304, at *8-10 (explaining how the Commission will determine if an individual's symptoms affect the ability to perform work-related activities).  The ALJ should explain which symptoms he found consistent or inconsistent with the evidence in Plaintiff's

---

[13] "Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent."  SSR 16-3P, 2017 WL 5180304, at *9.

record, and how his evaluation of the symptoms led to his conclusions.  SSR 16-3P, 2017 WL 5180304, at *8, 10; *see also Mortise*, 713 F. Supp. 2d at 124.

## V.    CONCLUSION

Considering the foregoing, the Court finds the Commissioner's decision was not based upon correct legal standards and substantial evidence does not support the determination that Plaintiff was not under a disability within the meaning of the Social Security Act.

**WHEREFORE**, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Decision and Order; and it is further

**ORDERED** that the Clerk provide a copy of this Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED**.

Dated:        December 14, 2021
              Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

21